IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN F. HANDSHUE, JR., | ) | CASE NO. 1:07 CV 3649 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | MAGISTRATE JUDGE |
| Commissioner of Social Security, | ) | BENITA Y. PEARSON |
| | ) | |
| Defendant. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |

This matter was referred to this Court for the submission of a report and recommendation on the final decision of the Social Security Administration denying Social Security Income to Plaintiff Benjamin F. Handshue, Jr. This Court recommends that the decision denying benefits be reversed and that the case be remanded for further proceedings consistent with this opinion.

## I.  Overview

At the time of the Social Security Administration's ("Agency") denial of Handshue's last application for Social Security Income ("SSI"), it was largely undisputed that Handshue was 20 years old and stricken by cerebral palsy which more severely affected the left side of his body and, for seemingly undiagnosed reasons, he occasionally succumbed to hypnotic like trances and, approximately ten to twenty times per day, engaged in an involuntarily hand-clapping phenomenon. At the date of his last Agency hearing, Handshue's previous employment

1

consisted of a part-time job stocking produce at Wal-Mart and he had only a temporary drivers license.

Despite Handshue's undisputed limitations and without applying the required legal standards or fully considering the medical evidence in the record, the Administrative Law Judge ("ALJ"), found that Handshue could work as an unarmed security guard or a counter clerk and, thus, was not disabled and not entitled to benefits.

## II.  Procedural History

Handshue applied for SSI on December 30, 2003.  On April 30, 2004, the Agency, determined that he was not disabled and not eligible for benefits.  Upon reconsideration on August 19, 2004, the Agency again denied Handshue benefits.  Consequently, Handshue requested and obtained a hearing before an ALJ on July 21, 2005.  The ALJ denied Handshue benefits on June 12, 2006.  Handshue then appealed to the Appeals Council.  The Appeals Council denied review on October 10, 2007.  Handshue timely filed a Complaint with this Court alleging that the ALJ made several findings in his opinion that were not supported by substantial evidence or were not properly articulated to constitute adequate reasons for the findings. Additionally, Handshue claims a medical expert ("ME") should have participated in the ALJ's hearing in order to properly analyze the medical record.  Specifically, Handshue asserted the following five assignments of error:

1. Did the ALJ err by rejecting the opinions of Plaintiff's treating physician?

2. Did the ALJ err by giving great weight to opinions from Social Security's own consultative doctors?

3. Did the ALJ err by finding Plaintiff not fully credible?

4. Did the ALJ err by finding an incorrect Residual Functional Capacity, and

>by adopting vocational expert testimony in response to a hypothetical that is not supported by substantial evidence?
>
>5. Did the ALJ err by not having a medical expert present at the hearing?

ECF No. 13 at 1.

### III. Law and Analysis

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. Brainard v. Sec'y of Health & Human Servs., 889 F.2d 679, 681 (6th Cir. 1989) (citing Richardson v. Perales, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994). The ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. See Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999). Furthermore, judicial review of the ALJ's decision must be based on the record as a whole. Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001). The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ. Id. The Court must review the findings of the ALJ consistent with the above deferential standards.

### A. The ALJ's Decision Cannot Serve as an Adequate Basis for Denial

While the Court does not require a perfect opinion, it does ask for a logically consistent one. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544-46 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating

3

physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("we cannot uphold a decision by an administrative agency . . . if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

In this case, the ALJ delivered his denial of benefits in an extremely brief opinion consisting of roughly three unilluminating paragraphs that contain misstatements of the record and unsupported conclusions.  *See* (Tr. 15.)  Brevity is to be applauded when thoroughness and accuracy are not sacrificed.  This Court found both virtues lacking in the ALJ's decision.

Without much effort, the Court found at least three misstatements of the record in the ALJ's opinion.  The first is the ALJ's statement that Handshue was attending or able to attend normal college classes.[1]  This is simply an inaccurate statement.  Handshue stated in his testimony that he was going to *try* to attend community college in the coming fall.  (Tr. 333.)  At the time of the hearing, Handshue's ability to attend college was at best, speculative.  The second misstatement by the ALJ is that Handshue refuses to try medication to control his seizures.  The medical record contains no diagnosis that Handshue suffers from seizures per se.  Dr. Elaine Wyllie, an epileptologist with the Cleveland Clinic, stated in her report that Handshue's "episodes do not appear to be epileptic seizures.  However, . . . he is *at risk* of having seizures."  (Tr. 311.) (emphasis added).  The third misstatement is that Handshue's right hand is capable of fine manipulation because he is able to work part-time stocking produce at Wal-Mart.  The

---

[1] The ALJ uses this misstatement and others, to find Handshue's testimony lacked credibility and/or that his treating physician's opinion is given "minor value."  Both issues are discussed *infra*.

Court's review of the record does not find that apparent from the record nor does the ALJ adequately explain the linking of the part-time job stocking produce with fine manipulation capabilities.

In addition to the misstatements, the ALJ also reached several unsupported medical conclusions that were allegedly based upon the testimony of Handshue and his mother and Dr. Wyllie's report. One such conclusion is that because Handshue refuses to take anti-seizure medication, an inference can be made that his seizures are "not so serious as to limit his ability to perform full time work." (Tr. 15.) The ALJ's conclusion leaves this Court puzzled for several reasons. At the threshold and as discussed above, Dr. Wyllie did not definitively determine that Handshue suffers from seizures. Given that Handshue may not suffer from seizures, this Court wonders why then the ALJ assumed that Handshue *must* "attempt" anti-seizure medication or be presumed able to perform full time work. Additionally, *if* Handshue does suffer from seizures (of some form) and does not take medication to control them (without any discussion as to why Handshue may have refused "seizure" medication), how then was the ALJ able to infer (without any medical testimony) that the seizures must not be "so serious as to limit one's ability to perform full-time work"?

Other unsupported conclusions are that Handshue's testimony lacks credibility and his treating physician's opinion deserves only "minor value" because Handshue plays video games, performs martial arts, and does some cooking, cleaning, and shopping.[2]

---

[2] "The fact that appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this appellant possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of the pain suffered by appellant." *Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967).

The only evidence in the record that Handshue cooks stems exclusively from his mother's testimony.  Ms. Handshue testified that her son helps with the cooking and can make pancakes and scrambled eggs.  She also testified that she had to learn how to crack an egg with one hand in order to teach Handshue the same skill.  She further testified that he has difficulty with holding a pan on the stove and moves at a slower pace than an ordinary person.  Based upon this testimony, in his written opinion, the ALJ simply stated the bald fact that Handshue "does some cooking." And, the ALJ, determined, therefrom, that fine finger manipulation exists on Handshue's right side and that both the testimony of Handshue and his mother lack credibility.

The ALJ made the same leaps of logic when making determinations with respect to Handshue's testimony that he plays video games and performs martial arts.  The record does not reveal efforts by the ALJ to discover the extent of Handshue's video game playing and martial arts abilities.  The record does not, for example, answer the following questions.  Does Handshue play video games with one hand or two?  Does he use one finger or more?  Does he attend formal martial arts classes or does he perform on his own?  What martial arts movements can Handshue perform?  Are the movements simple or complex?  The record is completely void of information regarding all of these details.  The ALJ's conclusions that these activities somehow prove that Handshue is capable of fine manipulation with his right hand and lacks testimonial credibility are unsupported by the record.

Therefore, based upon the ALJ's above misstatements and unsupported conclusions, the Court does not find that substantial evidence exists to support the ALJ's determination that

Handshue is not disabled.[3]  *See Securities and Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."); *Municipal Resale Serv. Customers v. FERC*, 43 F.3d 1046, 1052 n.4 (6th Cir. 1995) (same).

> **B.  The ALJ Did Not Apply Proper Legal Standards**
>
> 1.  *Credibility Findings*

It is not the function of a reviewing court to determine the credibility of the claimant. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987).  Credibility determinations regarding a claimant's subjective complaints rest with the ALJ.  *See Hopkins v Comm'r of Soc. Sec.*, 96 Fed.Appx. 393, 395 (6th Cir. 2004) (citing *Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)).  The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly.  *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

When an individual alleges disabling symptoms, 20 C.F.R. §416.929 requires the ALJ to follow an outlined process for evaluating these symptoms.  First, the ALJ must determine whether objective medical evidence supports the claimant's allegations regarding the disabling

---

[3] The Commissioner, in his brief to the Court, provides a detailed review of the medical evidence and testimony and, at least, his impressions of how they relate to the opinions of the treating and consultative physicians and concludes that the ALJ was correct in rejecting those opinions.  The ALJ, however, did not provide the same analysis.  Therefore, such a recitation is purely conjecture upon the part of counsel and cannot serve as the basis for review by a court. *See Watford v. Apfel*, No. 1:00 CV 00004, p. 13 (N.D. Ohio April 24, 2001); *see also NLRB v. Kentucky River Cmty. Care, Inc.*, 532 U.S. 706, 715 n.1 (2001) (counsel's *post hoc* rationalizations are not substituted for the reasons supplied by the administration).

effects of the impairment. *Id.* If the ALJ finds that the objective medical evidence does not support the claimant's allegations, the ALJ may not simply reject the claimant's statements, but must consider them in light of the entire record. *Id.* In assessing the credibility of statements, the ALJ must look to the relevant evidence in the record. *See* SSR 96-7p. In addition to the medical evidence, the ALJ should consider seven factors, as they may be relevant to a particular claim.[4] The ALJ need not analyze all seven factors, but should make clear that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). The credibility determination must contain specific reasons for the finding, "supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p; *see also Cross*, 373 F. Supp. 2d at 733. Additionally, SSR 96-7p reads, "The finding on credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."

According to 20 C.F.R. § 402.35(b)(1), Social Security Rulings "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the Social Security Administration and "are binding on all components of the Social Security

---

[4] The seven factors are: (1) individuals daily activities; (2) location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c); SSR 96-7p.

Administration." *Sykes v. Apfel*, 228 F.3d 259, 271 (3d Cir. 2000); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (noting that a federal agency is obliged to abide by the regulation it promulgates).  In *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), the Sixth Circuit made it clear that the ALJ cannot merely recount the medical evidence and claimant's daily activities and then without analysis summarily conclude that the testimony lacked credibility.

These regulatory and court imposed strictures were not followed in this case.

In an unsubstantiated statement, the ALJ, concluded that Handshue's testimony was "not totally credible."  (Tr. 15.)  The ALJ announced this conclusion without any accompanying analysis and merely cites to SSR 96-7p in a parenthetical as his legal authority.  And, as addressed in detail above, in addition to lacking analysis as to how that testimony caused him to conclude that it was not credible, the ALJ's attempts to recount the testimony of Handshue and his mother regarding Handshue's daily activities were misstated or unsupported.

 According to Social Security Ruling 96-7p and Sixth Circuit case law, the credibility determinations by the ALJ are insufficient.  *See Felisky*, 35 F.3d at 1039.  Moreover, it appears from the record that substantial evidence does not exist to support the ALJ's decision to discount Handshue's or his mother's credibility.

2. *The Weight of the Treating Physician's Opinion*

The ALJ was required to provide "good reasons" for rejecting the treating physician's opinion.  *See Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  In *Wilson*, the Sixth Circuit explained that the ALJ is required to follow his or her agency's procedural requirements, which

9

include providing good reasons for the weight given a treating source opinion, and that a failure to do so may result in remand even if substantial evidence supports the ALJ's ultimate conclusion. *Wilson*, 378 F.3d at 544-46. *Wilson* continues, "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors – namely, the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2)).

Here, the ALJ mentioned the treating physician's opinion, and cited some of his examination findings, but did not provide sufficient analysis to support his declaration that he found the treating physician's opinion to be of only "minor value." (Tr. 15.)

Thus, the ALJ's finding regarding the weight given to Handshue's treating physician is insufficient, given that the ALJ did not follow the Agency's regulatory strictures nor did he comport with Sixth Circuit law for providing a proper analysis.

**C.     A "Full Inquiry" Requires the Testimony of a Qualified Medical Expert**

Although the burden is on the claimant to provide an adequate record upon which the ALJ can make an informed decision as to disability status, *see Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986), the ALJ is required to "develop the factual record fully and fairly" and to conduct a "full inquiry." *See Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986); *Landsaw*, 803 F.2d at 214. In this case, a "full inquiry" requires the engagement of a medical expert qualified to testify about the cumulative effects of Handshue's documented impairments. The ALJ denied Handshue benefits

without the aid of such an expert.  The obvious absence of the testimony of a medical expert prevented the ALJ from conducting a "full inquiry" and has prevented this Court from conducting a fair review of Handshue's denial.  *Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d at 1111.  Furthermore, the Commissioner's decisions must be based on testimony and medical evidence in the record, and "[t]he ALJ cannot make his own independent medical determinations about the claimant."  *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985) (citing *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982)).

In his decision making, the ALJ completely ignored Handshue's hand-clapping phenomenon and trance-like states.  Additionally, the ALJ misstated evidence in the record, reached unsupported medical conclusions, and based his credibility findings and the determination of the minimal weight given to the treating physician's testimony chiefly on those misstatements and unsupported conclusions.  Therefore, this Court believes that the ALJ erred in failing to avail himself of the benefit of testimony of a qualified medical expert on the issues of Handshue's residual functional capacity and the credibility of Handshue's subjective and objective physical limitations in light of the medical evidence available in the record.

## IV.  Conclusion

The ALJ's opinion is deficient as it lacks properly applied relevant legal standards and is not supported by substantial evidence in the record.  Therefore, this Court finds that the final Agency decision that Handshue is not disabled and, therefore, not entitled to SSI, must be overturned.

## V.  Recommendation

This Court recommends that the final Agency decision denying Handshue SSI be reversed and that the case be remanded, pursuant to the fourth sentence of 42 U.S.C. § 405(g), with instructions that, upon remand, the ALJ consider all of Handshue's documented limitations, including the hand-clapping and trance-like states and that the ALJ's decision be aided by the testimony of a qualified medical expert.


Dated:  11/20/2008                                              /s/Benita Y. Pearson
                                                                Benita Y. Pearson
                                                                United States Magistrate Judge


## OBJECTIONS

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).